**296**    PEOPLE ex rel. McMACKIN *v.* BD. OF POLICE.

FIRST DEPARTMENT, OCTOBER TERM, 1887.

*THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN McMACKIN and ANOTHER *v.* BOARD OF POLICE.

*A peremptory writ of* mandamus *not granted when an issue of fact is raised by the return; an inferential denial is now permitted—Code of Civil Procedure, sec. 2077— when the alternative writ is directed to a board and the individual members thereof, each member may make a return — the failure of a board to make an appointment within the time prescribed by the act (chap. 490 of 1887) does not deprive it of the power to thereafter make it, in the absence of any prohibition to do so.*

On the affidavit of one John McMackin, and other papers and documents annexed to it, an application was made by the United Labor party, which claimed that it had, as a political organization, cast for its candidate, in the election of 1886, upwards of 50,000 votes, for a peremptory writ of *mandamus* commanding the board of police commissioners to appoint a fifth inspector of election for each election district, in the city of New York, as required by chapter 490 of 1887. The application was opposed upon an equally positive affidavit made by one W. P. Rogers denying that the United Labor party was the party or organization casting upwards of 50,000 votes at such election, and alleging that after that election the party or organization casting its vote for Henry George for mayor was substantially disbanded and divided into separate and distinct organizations, and that the United Labor party was a new and different organization from that which had deposited these votes.

*Held,* that this created an issue of fact which no court, without the consent of the parties, could consider and decide otherwise than by a formal trial, and that the application for a peremptory writ was properly denied.

An alternative writ was issued and served upon the members of the police board reciting, among other facts, that the party, known as the United Labor party, cast for its candidate for the office of mayor of the city of New York as many as 50,000 votes and upwards.

The return made by the board did not, in direct terms, deny this statement, but set forth the proceedings of the board, which showed that two of the commissioners adopted as true the assertion that such votes were cast by the United Labor party, while the other two members of the board differed with them in this conclusion and were unwilling to consent to the appointment of the inspectors selected from that party.

*Held,* that a demurrer, interposed by the counsel for the United Labor party to the return, for insufficiency in not directly denying the statement, was properly over-ruled as the old practice, which would not permit an inferential denial of this description, had been changed by statute, the provisions of chapter 6 of the Code of Civil Procedure relating to the form and contents of an answer containing denials or allegations of new matter, except those relating to the verification

---

* Decided October 10, 1887.

PEOPLE ex rel. McMACKIN v. BD. OF POLICE. 297

First Department, October Term, 1887.

and to a counter-claim, being, by section 2077 thereof, made applicable to returns to alternative writs.

The alternative writ recited, among other things, " that you, the said board of police, and you, and each of the commissioners composing the same, have, to the injury of the said United Labor party, and to the injury of the said John McMackin, chairman, and John N. Bogert, secretary of the county committee of the United Labor party, in said city of New York, refused to make such appointment," and the mandatory part of the writ was directed to and included the board itself and its members as individuals, and required them to convene and appoint an additional inspector, and in case of failure to make such appointment, that they should show cause to the contrary before the General Term. In addition to the return made by the board of police commissioners, two of the commissioners made a further return directly and positively denying the statements in the writ.

Held, that a motion by the counsel for the relators to quash or set aside, or demur to this return, was properly denied, as the writ was directed to, and was intended to include each of the commissioners as members of the board as well as the board itself.

People v. Supervisors, etc. (27 Cal., 655), distinguished ; King v. Baily (1 Keble's, 33) followed.

That the fact that the board had not made the appointment until after the expiration of the month of September, while the act (chap. 490 of 1887) directed that it should be made in the months of August and September in each year, did not invalidate such appointment; that the delay until after September did not deprive the board of power to make the appointment after that time, as the act nowhere prohibited it from so doing, in case it should not have been made during the said two months.

Witharil v. Mosher (9 Hun, 412, 415); People ex rel. Van Wyck v. Wheeler (18 id., 540) ; Matter of Broadway Widening (63 Barb., 573) followed.

Motion for judgment on the return of the board of police to a writ of alternative *mandamus ;* and appeal from an order of the Special Term denying a motion for a peremptory *mandamus* and directing the issuing of an alternative writ.

*E. M. Shepard* and *Samuel H. Ordway*, for the relators and appellants.

*E. E. Anderson* and *T. B. Wakeman*, for the respondents and another.

*Per Curiam :*

The applications in each instance have been made under chapter 490 of the Laws of 1887, for the appointment of a fifth inspector of election for each election district in the city of New York. The

applications were made on behalf of the United Labor party on the, ground that it, as a political party or organization, had cast for its candidate in the election of 1886 upwards of 50,000 votes.   If this allegation had been established beyond reasonable ground of controversy then the motion for a peremptory writ of *mandamus*, directing the board of police commissioners to appoint the additional inspectors from that party, would have been successful, for where a right of this description is maintained upon a substantially conceded state of facts, there the law permits a peremptory writ of *mandamus* to be issued in the first instance.   But the facts were not so established. The affidavit of John McMackin, and the papers and documents. annexed to it, standing by themselves, did make out a right to the writ in this form.   But that was met by an equally positive affidavit, verified by W. P. Rogers, denying that the United Labor party was the party or organization giving upwards of 50,000 votes for its candidate in the fall of 1886.   This affidavit or statement, verified by him, alleged the fact to be·that after the election of 1886, the party or organization casting its vote for Henry George for mayor was substantially·disbanded and divided into separate and distinct organizations, and that the United Labor party was a new and different organization from that which had deposited these votes at the last election.   This necessarily created,an issue of fact which no court without the consent of the parties has been permitted to consider and decide otherwise than by a formal trial.

It is not important that the judge presiding in the court might be able to determine from the affidavits the probabilities in favor of one or the other of the contestants, for the law has not permitted the controversy to be tried and disposed of in that manner without the consent of the contestants themselves.   Where such consent has not been given, as it was not on the hearing of this application, there section 2083 of the Code of Civil Procedure has directed that the issue of fact must be tried by a jury.   That condition of the case consequently deprived either of the applicants of the immediate right to a writ of peremptory *mandamus*, and the order from which the appeal has been taken denying the motion for that writ is accordingly to be affirmed.

The alternative writ of *mandamus* which in this state of the facts was issued by the Special Term was served upon the members of the

PEOPLE ex rel. McMACKIN v. BD. OF POLICE.  299

First Department, October Term, 1887.

police board. This writ recited, among other facts, the statement that the party known as the United Labor party cast for its candidate for the office of mayor of the city of New York, as many as 50,000 votes and upwards, and no direct denial was in the first instance made by the return of the board of this statement. The counsel appearing for the United Labor party accordingly demurred to the return, affirming in this respect its insufficiency; but while this statement was not directly or in language denied, a state of facts was returned by the board disclosing the existence of conflicting claims concerning it upon which they proved to be unable to decide or conclude that the United Labor party was the political party or organization that cast upwards of 50,000 votes for its candidate for mayor in the election of 1886. Two of the commissioners, Messrs. French and McClave, adopted the assertion as true that such votes were cast by the United Labor party, while the other two members of the board differed with them in this conclusion and were unwilling, therefore, to consent to the appointment of the inspectors selected from the United Labor party; and these proceedings were returned as the answer of the board to the alternative writ of *mandamus*. While, therefore, the board did not directly deny the statement made in the writ, it inferentially did make that denial, for it appeared from the proceedings which were returned that they were unable, as a board, to decide the fact in favor of the United Labor party upon which their right to the inspector depended, that it was the party or organization which had cast for its candidate as many as 50,000 votes or upwards, and without that fact being established to the satisfaction of the board they could not make the appointment of the additional inspectors from that party or organization. As the practice was followed in the early administration of the common law an inferential denial of this description would not have been permitted. There the utmost particularity and precision were required to be observed and the reason upon which the rule was founded was that the return when it was made became conclusive and could not be questioned in that proceeding, but the remedy of the relator, if it was not true, was to bring an action against the respondent for damages for making a false return and it was of the utmost consequence to him in maintaining such an action that the return should be precise, positive and unequivocal. But this

300    PEOPLE ex rel. McMACKIN v. BD. OF POLICE.

First Department, October Term, 1887.

has been changed by statute. and for many years it has been the
practice to allow the relator to take issue upon the return and to
have a trial of the facts the same as might be had in any other liti-
gation.   The same strictness in the return has accordingly ceased to
be necessary and it has now been made analogous to pleadings in
other actions.   This was considered in *Springfield* v. *Commissioners
of Hampden* (10 Pick, 59), where it was held as the result of the
more recent authorities that a return is sufficient if it contains a full
and certain answer to the allegations expressly made and discloses a
fair legal reason why the *mandamus* should not be obeyed.   (Id., 68.)
And this rule, still further liberalized, has found its way into the
Code of Civil Procedure, for by section 2077 the provisions of
chapter 6, relating to the form and contents of an answer containing
denials or allegations of new matter, except those relating to the
verification and to counter-claim, apply to a return to an alterna-
tive writ of *mandamus* showing cause against obeying the command
of the writ, and the provisions of the Code concerning the answer
in an ordinary litigation are such as to permit an inferential or argu-
mentative pleading, and as that is permitted in other litigations it
may be equally allowed in an answer to an alternative writ of *man-
damus*.   Before the Code argumentative pleadings could only be
corrected by a special application aimed at the defect and the rule
seems to be equally so under its provisions.   By this rule the answer
of the board cannot be construed into an admission of the allegation
contained in the writ that upwards of 50,000 votes were deposited
by the United Labor party for its candidate in 1886, and that effect
was accorded to a similar disagreement presenting a direct return in
*Rex* v. *Mayor*, etc. (2 Burrow 798).   But if it should be held
otherwise the further return of John R. Voorhis and Fitz John
Porter, two of the commissioners, has been made upon the basis of
a direct and positive denial of those statements in the writ of *man-
damus*.   That return, however, the counsel for the relators has
moved to quash or set aside, or made the subject of a demurrer, and
reliance has been placed upon what was said in section 460 of the
second edition of High on Extraordinary Remedies to support these
applications.   The rule is there very clearly laid down that the
return to the alternative writ of *mandamus* is to be made by the
board alone to which the writ may be directed.   That was also very

fully considered in *People* v. *Supervisors, etc.* (27 Cal., 655), where individual members of the board had made returns to the writ. Those returns were set aside or quashed but the reason for that action was that the *mandamus* was directed to the board itself; while in this case it has not only been directed to the board but to each and every one of the commissioners composing the same. That it was intended to include each of the commissioners as members of the board, as well as the board itself, appears still further by subsequent portions of the alternative writ, for by the last of the recitals contained in it the allegation is made, "that you, the said board of police, and you, each of the commissioners composing the same, have, to the injury of the said United Labor party and to the injury of the said John McMackin, chairman, and John N. Bogert, secretary of the county committee of the United Labor party in said city of New York, refused to make such appointment." Then follows the mandatory part of the writ, which was plainly intended to be directed to and include the board itself and its members as individuals, for it is to them that the command was directed that they should forthwith convene and appoint as the additional inspectors of election those persons who had been selected by John McClave; or, in case of failure to make such appointment, then it was directed "that you show cause to the contrary before our Supreme Court in General Term," etc. Both these directions were given not only to the board of police as such, but to its individual members, and accordingly made the members, as well as the board, parties to this proceeding, and, being parties, they had the right to answer under the provisions of the Code, which have already been mentioned, applying the same rules as apply to defendants answering a complaint in the ordinary course of litigation. Such defendants have the clear right to answer jointly or severally, and that was likewise the rule at common law. In *King* v. *Baily* (1 Keble's, 33), the writ issued to the aldermen, bailiffs and commonalty of a municipal corporation, but the return was made by the bailiffs and capital burgesses, which was adjudged to be a bad or insufficient return and it was then held by the court that one part of the corporation might make one return, and the other part might make another return. (Id., 34.) This decision proceeded upon the ground that these different portions or attributes of the corporation

302 PEOPLE ex rel. McMACKIN v. BD. OF POLICE.

First Department, October Term, 1887.

were made parties to the writ. But they were no more so in that instance than were the individual members of the board by the language contained in the writ issued in this case. The general rule followed by the authorities has expressly been that all the parties in the writ are not only at liberty but it is their duty to answer it ; and such was the command of this writ, that if the board and its members failed to appoint the persons selected by Commissioner McClave, that then you (that is the board and each of the commissioners composing the same as they were previously mentioned in the writ) show cause to the contrary before our Supreme Court. In this respect the case very clearly differed from the authorities relied upon by the counsel for the relators and not only authorized but required the members of the board to return to the court a statement of their reasons for not complying with the mandatory part of the writ. That was a complete authority for the return of these two commissioners and even if it should be admitted that the other two commissioners had failed to deny the statement that it was the United Labor party that had given the 50,000 votes in the preceding election, this answer created an issue as to that fact which requires to be tried and disposed of before any appointment can be made or the right of the relator to a peremptory writ of *mandamus* can be determined ; for the admission of two of the commissioners, even as the representatives of the board itself, cannot be conclusive against its other members under this particular form given to the writ.

The two commissioners uniting in the last return also doubted the power of the board to appoint the additional inspectors after the expiration of the month of September. This doubt was placed upon the direction given in the act, that the appointment should be made in the months of August and September in each succeeding year for each election district in the city and county. But the act nowhere prohibits the appointment of inspectors after the month of September in case it shall not be made during that or the preceding month. The authority to appoint is one conferred upon the board for the benefit of the public, and where the time may have passed in which it should be done so long as the board was not prohibited from doing it afterwards, an appointment subsequent to the month of September would be legal and valid. For the people are not to be deprived of the benefit provided for them by the statute by the mere circum-

stance that the time has passed in which the act is directed to be performed.

*In the Matter of Broadway Widening* (63 Barb., 573) the report then considered was directed to be made within six months after the making of the order appointing the commissioners. But that was not done and the court in overruling the objection that it could not be afterwards done, added " there being no negative words in the statute prohibiting the making of a report after the time limited and no injury appearing to have occurred to the objector in consequence of the omission to do so, this provision must be deemed directory merely and a performance of a public duty after the lapse of the period within which the statute directed it to be done is in such a case good." (Id. 579.) And a similar decision was made in *Witheril* v. *Mosher* (9 Hun, 412, 415) and in *People ex rel. Van Wyck* v. *Wheeler* (18 Hun, 540) this rule was expressly held to be applicable to the appointment of election inspectors.

The sole point, therefore, upon which the right to the appointment of the additional inspector depends is, whether the United Labor party is the political party or organization which cast for its candidate in the preceding election as many as 50,000 votes or upwards. This was denied on behalf of the organization called the Progressive Labor party, and also, according to the papers contained in the return, by the Irving Hall Democracy, each of those organizations claiming to be the party which cast for its candidate in the election of 1886 this requisite number of votes.

The act has subordinated the right of the party or organization to the additional inspector to the fact that it is the political party or organization which cast for its candidate for any office as many as 50,000 votes or upwards in the election of 1886. Its language, excluding that portion of the section having no direct connection with this controversy, is that " if, at the next preceding municipal election, any political party or organization shall have cast for its candidate for any office as many as fifty thousand votes or upwards, * * * then it shall be the duty of said board of police to appoint for each election district in said city and county, one further and additional inspector of election of the political faith or opinion of said political party, and an enrolled member of the organization thereof, and the inspectors of election appointed to represent said

political party or organization, shall be appointed solely by such commissioner, or such of the commissioners of police in said board as the chairman and secretary of the organization of said political party in said city shall designate." That more than 50,000 votes were given for the candidate of a third party at the election of 1886, is by neither of the contestants denied. But it is conceded on the part of each of them. What is denied is that either of these contestants is the political party or organization which gave these votes, and it is only to the party giving such votes that the right to the additional inspector has been in this manner secured.

In order, therefore, to determine to which party or organization the additional inspector in each district can be given, it must first be ascertained and determined which of the contesting parties is the party, if either of them is, by which these votes were given; and until that fact is established to the satisfaction of a majority of the board of police, or to the satisfaction of the court upon this application, no authority to make any appointment of these inspectors exists either in the board of police or any member thereof. If the United Labor party is the party which cast those votes, then it is entitled to the appointment of these inspectors, while if it is the Progressive Labor party, or the Irving Hall Democracy, which gave these votes, then it is to that organization that the inspectors must be given; if it is neither of the three contestants, then it seems to follow that no additional inspectors can be appointed, for the additional inspectors have been exclusively given to the political party or organization which shall have cast for its candidate for any office at the preceding election as many as 50,000 votes or upwards; and as long as that fact remains in dispute and undetermined no additional inspectors can be appointed. The board is authorized to act only upon the establishment or appearance of that fact, and it is disputed by the contestants in this proceeding. Before a mandatory *mandamus* can be issued directing the board to appoint the additional inspectors, or any appointment can be made, this fact must be tried and determined. There is no authority under this act to proceed without it, and when it may be determined the course will be entirely clear and free from difficulty. But that cannot be tried or determined upon affidavits without the consent of the parties. It must be tried in the ordinary course of legal proceedings on legal

evidence produced before the court.  Ordinarily it would present an issue which should be directed to be tried by a jury.  But the parties to the contest have been permitted by the law to waive a trial by jury, and to consent either to a reference or to a trial before the court.  These parties, in open court, have consented to a trial before one of the justices of the court without a jury, and upon that consent this court has now the right to act, and in acting upon it, it can provide for a hearing of this controlling fact before a justice holding a Circuit Court.  The trial is one which should take place at the earliest practicable day, and should not be delayed for the ordinary period of notice, or even the filing of a note of issue, but it should be brought on summarily, as it may be, on one or two days' notice, before one of the justices of this court holding a Circuit Court, who will be designated for the purpose of hearing it.

The exigencies of the case require that it should be disposed of at the earliest practicable moment, so that if either of the parties is entitled to the appointment of this additional inspector, that appointment may be made, and the appointees may be ready to act with the other inspectors in caring for and protecting the interests of their constituents, and upon the determination of the court at the trial, this court upon being informed of the result will then be in a situation to decide the rights of the parties and to make provision, by its mandatory writ, for the immediate appointment of the inspectors which the successful party will be entitled to select, and an issue will be framed limiting the inquiry at circuit to the determination of this controverted question whether the United Labor party is the party casting these votes, or whether they were cast by the Progressive Labor party or by the Irving Hall Democracy, or whether neither of these contestants cast such votes.  That will be the full breadth and extent of the issues required to be tried, and their hearing and decision will accordingly demand no very large consumption of time.

An order to this effect will be entered as the result of the decision.

Order denying peremptory *mandamus* affirmed; issues to be framed as directed in opinion; order to be settled by Mr. Justice DANIELS.